**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CHRISTINA M. TELISKI | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LANCE A. THORNTON | |
| Appellant | No. 1405 WDA 2016 |

Appeal from the Order Entered September 15, 2016
In the Court of Common Pleas of Erie County
Domestic Relations at No(s): NS201600393/PACSES No. 225115840

BEFORE:  MOULTON, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY MOULTON, J.:          **FILED JUNE 29, 2017**

Lance A. Thornton appeals from the September 15, 2016 order of the Erie County Court of Common Pleas directing Thornton to pay Christina M. Teliski[1] $956.05 per month in spousal support effective March 28, 2016.  We affirm.

On April 15, 2014, the trial court assessed Thornton with an earning capacity of $115,000 in a separate child support action filed by Lorraine McCall.[2]  Thornton appealed the April 15, 2014 assessment, and this Court

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Teliski did not file a brief with this Court.

[2] The trial court explained this assessment as follows:

> The assessment was based upon Mr. Thornton's prior employment with STNA and was the same earning capacity

*(Footnote Continued Next Page)*

affirmed. ***See McCall v. Thornton***, No. 790 WDA 2014, unpublished mem. (Pa.Super. filed Dec. 31, 2014).

On January 14, 2016, following a support modification conference, the Domestic Relations Section of the Erie County Court of Common Pleas entered an interim order in ***McCall***, assessing Thornton's earning capacity at $115,000. Thornton demanded a *de novo* hearing. At that hearing:

> Mr. Thornton presented evidence indicating that his business, RainEater, LLC, was restructured and is now Eric Automotive Aftermarkets Holdings, Inc. In addition, Mr. Thornton, asserting that his income is only around $50,000 per year as an employee for Eric Automotive Aftermarket Holdings, Inc., testified that he no longer manages or

*(Footnote Continued)* ───────────────

> set for Father on January 8, 2013 . . . As previously explained:

>> [Mr. Thornton] did not challenge the $115,000.00 earning capacity assessment in January of 2013. Furthermore, [Mr. Thornton's] circumstances have not changed since January of 2013. He owns and operates RainEater now, as he did then. RainEater allegedly operated at a loss in excess of $100,000 then as it allegedly does now. The only thing which has changed is that [Mr. Thornton], inconsistent with his position of lack of income, is now building a $328,105.00 home. In sum, in early 2013 Mr. Thornton accepted an assessment of $115,000.00 annual earning capacity, yet by the end of the year he wanted the Court to believe that he was incapable of such income, even though his circumstances had not changed and he was capable of building a $328,105.00 home.

> *See Opinion*, June 24, 2014 at 5-6.

Trial Ct. Op., 10/26/16, at 1-2 ("1925(a) Op.").

leads the company, that he does not make executive decisions and that he only retained approximately a 45% interest in the company.

Trial Ct. Op., 10/26/16, at 2 ("1925(a) Op."). On March 21, 2016, the trial court entered an order finalizing the January 19, 2016 interim order. Thornton appealed, and on December 22, 2016, this Court affirmed.[3] *See McCall v. Thornton*, No. 535 WDA 2016, unpublished mem. (Pa.Super. filed Dec. 22, 2016).

On March 28, 2016, Teliski filed a support complaint against Thornton, seeking spousal support and alimony *pendente lite* ("APL"). In its opinion, the trial court set forth the factual and procedural history of this case:

> Following a May 31, 2016 conference, an Interim Order of Court issued setting Mr. Thornton's monthly APL obligation as $956.05, plus $125 for arrears. The June 2, 2016 Summary of Trier of Fact issued by the conference officer details that Mr. Thornton was assessed with a $115,000 annual gross earning capability based upon the December 3, 2014 Superior Court ruling and March 9, 2016 *de novo* hearing in *McCall v. Thornton*. Mr. Thornton filed a Demand for Court Hearing. Following the *de novo* hearing, the Court issued its August 23, 2016 Order making the June 2, 2016 interim order a final order. Mr. Thornton, on September 20, 2016 filed his Notice of Appeal from the Order.

*Id.*

Thornton raises one issue on appeal: "The trial court erred and abused [its] discretion in assessing [his] income at $6,871.42 a month and

_____

[3] Although Thornton's brief acknowledges the importance of the *McCall* case, he did not advise us that another panel of this Court rendered a decision in that case adverse to him in December 2016.

not assessing his income at a level consistent with income taxes and pay records."[4]  Thornton's Br., Stmt. of Question Involved (suggested answer omitted).[5]  Our standard of review in support matters is as follows:

> [T]his Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground.  We will not interfere with the broad discretion afforded the trial court absent an abuse of . . . discretion or insufficient evidence to sustain the support order.  An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*W.A.M. v. S.P.C.*, 95 A.3d 349, 352 (Pa.Super. 2014) (quoting *Summers v. Summers*, 35 A.3d 786, 788 (Pa.Super. 2012)).

Thornton argues that the trial court incorrectly calculated his earning capacity.  However, Thornton admits that "this identical issue [was] before this Court regarding [his] earning capacity" in *McCall*, and that "the trial court at the [*de novo* hearing] noted that it would consider the evidence from the earlier case in arriving at a decision in this case."  Thornton's Br.,

---

[4] In his Pennsylvania Rule of Appellate Procedure 1925(b) statement, Thornton raised issues regarding collateral estoppel between the child support matter with Ms. McCall and the instant appeal.  However, Thornton has expressly abandoned these issues on appeal.  *See* Thornton's Br. at 5.

[5] Thornton's brief contains a table of contents with incorrect page numbers, and his brief is unpaginated.

Stmt. of the Case, ¶ 3. At the *de novo* hearing, Thornton admitted the similarities between ***McCall*** and this case:

> [THORNTON'S COUNSEL]: . . . Right now, Mr. – in another case, Mr. Thornton's income capability is on appeal to the Superior Court.
>
> THE COURT: That's one of my cases, right?
>
> [THORNTON'S COUNSEL]: Yes, ma'am. I didn't [k]now if – because the Superior Court is looking at that now, whether that's something that should be stayed until that decision is made? And again, I just brought that – wanted to bring that to the Court's attention, not normally dealing with an issue sort of like that, you know, back-to-back kind of issue.
>
> THE COURT: Yes, I understand what the position is. And our support conference officer in this case utilized the income capability from that previous case –
>
> [THORNTON'S COUNSEL]: Yes.
>
> THE COURT: -- that is currently up on appeal.
>
> [THORNTON'S COUNSEL]: Yes. So I don't know if this should be stayed until the Superior Court makes a decision on that, Your Honor.
>
> THE COURT: I understand what the issue is with regard to that. And I understand that **Mr. Thornton's argument in this case is the same as the argument in the case that's up on the Superior Court –**
>
> [THORNTON'S COUNSEL]: **Yes, Your Honor**.
>
> THE COURT: **-- and that is, what is his actual income.**
>
> [THORNTON'S COUNSEL]: **Yes, Your Honor**.
>
> . . .
>
> THE COURT: . . . I understand what your issue is, [counsel], so really the reason we're here today is Mr. Thornton's income capability. And your argument is that this proceeding should be stayed pending the resolution –

[THORNTON'S COUNSEL]: Yes, Your Honor.

THE COURT: -- of the Superior Court, and if the Superior Court deems that my determination in the prior case was incorrect, then it'll be remanded for a rehearing on income calculations.

[THORNTON'S COUNSEL]: Yes, Your Honor.

THE COURT: **And if I am upheld by the Superior Court, then, in fact, the income calculation that I establish from Mr. Thornton will be in place both for that case and then it would be in place for this case.**

[THORNTON'S COUNSEL]: **Yes, Your Honor**.

N.T., 8/5/16, at 3-5.

In deciding Thornton's prior appeal in **McCall**, this Court addressed Thornton's claims and the trial court's rationale for setting Thornton's earning capacity at $115,000 as follows:

[Thornton] complains that the trial court erred when it assessed his earning capacity based on a job that he held years ago and ignored all evidence that his current company is going through hard times and his income is diminished. He concedes that when he worked for NASCAR and STNA, he made a high income. However, when he lost his job at STNA when his division was sold, he started his own company, RainEater. [Thornton] further asserts that RainEater filed for bankruptcy. He was able to keep RainEater going but could not make it grow. He then transferred his shares to a group of investors and became an employee with a 45% ownership stake. At the hearing before the trial court, [Thornton] presented pay stubs to demonstrate that he earns a gross bi-weekly salary of $2,667.24. Brian Hickey, the controller for the new company, testified that [Thornton] does not have access to company funds and that the company was operating at a loss. According to [Thornton], the trial court abused its discretion when it determined that [Thornton] failed to show any material or substantial change of circumstances since the April 15, 2014 order.

- 6 -

The trial court explained its determination:

The Court remains unconvinced, however, that [Thornton's] reported earnings present an accurate picture of his actual income in connection with his business interests. As Brian Hickey testified, Erie Automotive Aftermarket Holdings, Inc. was created for the purpose of overtaking RainEater. While RainEater was restructured, [Thornton] clearly remains more than just an employee. First, inconsistent with [Thornton's] testimony of a 45% interest in Erie Automotive Aftermarket Holdings, Inc., both the Form 2553 Election by a Small Business Corporation for Erie Automotive Aftermarket Holdings, Inc. and the minutes from the October 1, 2015 Organizational Meeting of Shareholders and Board of Directors indicate that [Thornton] is an 82% shareholder of Erie Automotive Aftermarket Holdings, Inc. Moreover, while [Thornton] allegedly reports to Jeff Fatica, who is the CEO, Jeff Fatica holds only 4% ownership in the Company and he and all other officers of Erie Automotive Aftermarket Holdings, Inc. serve at the pleasure and under the direction and control of the Board of Directors. *See* Exhibit 7, *Bylaws of Erie Automotive Aftermarket Holdings, Inc.*; *see also Erie Automotive Aftermarket Holdings, Inc[.], Organizational Meeting minutes*, October 1, 2015. Meanwhile, [Thornton] is one of only five voting members of the Board of Directors of Erie Automotive Aftermarket Holdings, Inc. *See Erie Automotive Aftermarket Holdings, Inc[.], Organizational Meeting minutes*, October 1, 2015. Furthermore, [Thornton] admitted in his March 2016 testimony that, despite his lack of a formal leadership role in Erie Automotive Aftermarket Holdings, Inc., the employees of the company look up to him for guidance. This is clear as Brian Hickey, who was [Thornton's] only other witness and supposedly serves as the Controller for the new company, lacked any knowledge about ownership interests in the company. Mr. Hickey attempted to explain his lack of insight as his role serving more of the day to day operations and employee payroll type

of issues, yet [Thornton] even had to correct Mr. Hickey on how payment for employee insurance works. In that regard, the Court is not convinced that [Thornton] is merely an employee of Erie Automotive Aftermarket Holdings, Inc. with only $50,000 in income.

Accordingly, while the structure of [Thornton's] business may have changed, the Court is not convinced that it has changed in a manner which changed [Thornton's] income. [Thornton] has not been forthright regarding his interest and role with the business, continuing the appearance that his actual income is sheltered. In that regard, [appellant] failed to prove a material and substantial change of circumstances since entry of the April 15, 2014 Order.

Trial court opinion, 6/6/16 at 4-5.

Essentially, the trial court failed to find appellant credible. As fact-finder, that is the trial court's prerogative. It is not the role of this court to reweigh the evidence and make its own credibility determinations. *See Habjan v. Habjan*, 73 A.3d 630, 644 (Pa.Super. 2013). Further, the trial court's conclusion that appellant owned 82% of Erie Aftermarket Holdings, Inc., was supported by the evidence in the record. Because appellant was not found credible, he failed to meet his burden of proof. Here, appellant has failed to establish that the trial court abused its discretion when it adopted the interim order as final.

No. 535 WDA 2016, unpublished mem. at 5-7.[6]

_____

[6] Courts and parties ordinarily may not rely upon or cite an unpublished memorandum from this Court. *See* 210 Pa. Code § 65.37. However, we may do so here because Thornton, who was a party in the *McCall* case, agreed during the trial court proceedings that the outcome of this case would be controlled by this Court's disposition of the *McCall* appeal.

- 8 -

The calculation of earning capacity is based on the support guidelines under Pennsylvania Rule of Civil Procedure 1910.16, which are used regardless of whether the support ordered is paid to a child or a spouse. *See Strawn v. Strawn*, 664 A.2d 129, 132 (Pa.Super. 1995) ("Spousal (and child) support are to be awarded pursuant to a statewide guideline as established by general rule by the Pennsylvania Supreme Court"); Pa.R.C.P. 1910.16-1 ("[T]he support guidelines determine the amount of support which a spouse or parent should pay based on the parties' combined monthly net incomes as defined in Pa.R.C.P. No. 1910.16-2"). In light of Thornton's admissions before the trial court and this Court, our decision on the merits in *McCall*, and the support guidelines, we agree with our prior reasoning in *McCall* and affirm the trial court's order.[7]

---

[7] In its Rule 1925(a) opinion, the trial court found that the allegations of error with respect to the calculation of Thornton's earning capacity "are without merit for the reasons set forth by the Court in its June 6, 2016 Opinion in *McCall v. Thornton*[,]" because:

> [a]ll of the . . . allegations relate to the assessment of Mr. Thornton's income and are the same allegations made by Mr. Thornton regarding the same income assessment on appeal in *McCall v. Thornton* at 535 WDA 2016. This is consistent with the assertion of Mr. Thornton's counsel at the August 5, 2016 *de novo* hearing in [this case] that his evidence and position regarding Mr. Thornton's income was the same as that presented regarding his income in *McCall v. Thornton*.

1925(a) Op. at 4-5 (internal citations omitted).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/29/2017